# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIA BAVARO and NATHAN BLOSE, *On behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>JC WASHINGTON INC.; JC NORTHERN PIKE, LLC; JOHN DOE CORP. 1-10; JOHN DOE 1-10,<br><br>Defendants. | Case No.    2:18CV982<br><br>Judge |

## COMPLAINT -- CLASS AND COLLECTIVE ACTION

1.      Plaintiff Julia Bavaro and Nathan Blose, on behalf of themselves and all similarly-situated individuals, bring this action against JC Washington Inc.; JC Northern Pike, LLC; John Doe Corp. 1-10; and John Doe 1-10 based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), Pennsylvania Minimum Wage Law ("PMWA") 43 STAT.ANN. §333.01, 43 STAT.ANN §333.104(c), and 43 P.S. § 260.3.

2.      Defendants operate Domino's pizza restaurants in Pennsylvania (the "JC Domino's stores").

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers in Pennsylvania, pursuant to Fed. R. Civ. P. 23, to remedy violations of Pennsylvania wage and hour law by Defendants.

**I.    Jurisdiction and Venue**

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court supplemental jurisdiction over Plaintiff's Pennsylvania state law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

**II.   Parties**

**Plaintiff**

**Julia Bavaro**

10.     At all times relevant, Julia Bavaro has resided in Washington, Pennsylvania.

11.     Julia Bavaro was an "employee" of all of the Defendants as defined in the FLSA.

12.     Julia Bavaro has given written consent to join this action.

2

**Nathan Blose**

13.    At all times relevant, Nathan Blose has resided in Monroeville, Pennsylvania.

14.    Nathan Blose was an "employee" of all of the Defendants as defined in the FLSA.

15.    Nathan Blose has given written consent to join this action.

**Defendants**

16.    The JC Domino's stores are part of a single integrated enterprise.

17.    At all relevant times, the JC Domino's stores shared common management and were centrally controlled and/or owned by Defendants.

18.    At all relevant times, all Defendants maintained control over labor relations at JC Domino's stores.

19.    During all relevant times, Defendants permitted employees to transfer or be shared by and between the JC Domino's stores without retraining.

20.    Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated delivery drivers, and also exercise that authority.

21.    During all relevant times, Defendants also exercised operational control over the delivery drivers at Defendants' stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**JC Washington Inc.**

22.     Defendant JC Washington Inc. is a domestic corporation with its principal place of business at 315 Jefferson Ave., Washington, PA 15301.

23.     JC Washington Inc. was incorporated by Ruth Denehey.

24.     JC Washington Inc. is the corporate entity that appears on Julia Bavaro's paystubs for work completed for Defendants.

25.     JC Washington Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.     Upon information and belief, JC Washington Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

27.     JC Washington Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

28.     At all relevant times, JC Washington Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

29.     JC Washington Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

30.     At all relevant times, JC Washington Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

31.     JC Washington Inc.'s gross revenue exceeds $500,000 per year.

**JC Northern Pike, LLC**

32.     Defendant JC Northern Pike, LLC, is a domestic limited liability company with its principal place of business at 4305 Northern Pike, Monroeville, PA 15146.

33.     JC Northern Pike, LLC was incorporated by Ruth Denehey.

34.     JC Northern Pike, LLC is the corporate entity that appears on Nathan Blose's paystubs for work completed for Defendants.

35.     JC Northern Pike, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

36.     Upon information and belief, JC Northern Pike, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

37.     JC Northern Pike, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

38.     At all relevant times, JC Northern Pike, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

39.     JC Northern Pike, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

40.     At all relevant times, JC Northern Pike, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

41.     JC Northern Pike, LLC's gross revenue exceeds $500,000 per year.

**John Doe Corp. 1-10**

42.     Upon information and belief, Defendants may own and operate other entities and/or limited liability companies that also form part of their Domino's Pizza franchise operation and therefore qualify as Plaintiff's "employer" under the FLSA and Pennsylvania law.

43.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe Individuals 1-10**

44.     Upon information and belief, there are individual Defendants who own an interest and/or have operational control over the Defendants' stores that also qualify as Plaintiff's "employer" under the FLSA.

45.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

### III.    Facts

### Class-wide Factual Allegations

46.     During all relevant times, Defendants operated the JC Domino's stores.

47.     Upon information and belief, there are at least 8 JC Domino's stores.

48.     The primary function of the JC Domino's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

49.     Some or all of the JC Domino's stores employ delivery drivers.

6

50.     Plaintiffs and the similarly situated employees Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the JC Domino's stores.

51.     All delivery drivers employed at the JC Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

52.     Delivery drivers at the JC Domino's stores work "dual jobs"—one job was delivering pizzas, and the other was completed various non-tipped tasks inside the restaurant that are unrelated to the drivers' delivery tasks.

53.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the JC Domino's stores doing related and non-tipped work such as building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

54.     Defendants' delivery drivers are required to spend approximately half of their time at work working inside the restaurant in a non-tipped capacity.

55.     Defendants' delivery drivers' inside job duties are not related to their delivery duties.

56.     Defendants' delivery drivers are paid at a tipped wage rate—i.e., less than minimum wage—for hours worked in a non-tipped capacity.

57.     Defendants' delivery drivers are paid minimum wage minus a tip credit for all hours worked.

58.     Upon information and belief, Defendants did not provide Plaintiffs and similarly situated drivers with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

59.     Defendants failed to provide proper notice of the tip credit provisions of the FLSA because they failed to pay the wage rate they promised to pay.

60.     At all relevant times, Plaintiffs and similarly situated persons have been paid an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

61.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

62.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

63.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

64.     One or more of the Defendants' Domino's Pizza stores do not reimburse delivery drivers for their actual expenses.

65.     In fact, none of the Defendants' Domino's Pizza stores reimburse delivery drivers for their actual expenses.

66.     One or more of the Defendants' Domino's Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate.

67.     In fact, none of the Defendants' Domino's Pizza stores reimburse delivery drivers at the IRS standard business mileage rate.

68.     One or more of the Defendants' Domino's Pizza stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

69.     In fact, none of the Defendants' Domino's Pizza stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

70.     Delivery drivers at the Defendants' Domino's Pizza stores are reimbursed a flat rate per delivery no matter how many miles the deliveries take to complete.

71.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.  2015: 57.5 cents/mile
    b.  2016: 54 cents/mile
    c.  2017: 53.5 cents/mile
    d.  2018: 54.5 cents/mile

72.     As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

73.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

74.      All of Defendants' delivery drivers had similar experiences to that of Plaintiffs.

75.     They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

76.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable

underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

77.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

78.    Defendants have willfully failed to pay minimum wage to Plaintiffs and similarly situated delivery drivers at the Defendants' Domino's Pizza stores.

**Plaintiffs' Individual Factual Allegations**

**Julia Bavaro**

79.    Julia Bavaro worked as a delivery driver at one of Defendants' Domino's Pizza stores located at 250 Oak Spring Road in Washington, Pennsylvania from January 2016 to March 2017.

80.    Julia Bavaro regularly worked 50-60 hours per week.

81.    Julia Bavaro is paid a "tipped" minimum wage, *i.e.*, less than minimum wage, for all hours worked.

82.    Specifically, Julia Bavaro receives $6.00 per hour.

83.    Julia Bavaro worked for Defendants in two separate jobs.

84.    Julia Bavaro delivered pizza and other food items to Defendants' customers' homes and businesses.

85.    When she was not making deliveries, Julia Bavaro worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes,

cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

86.    Julia Bavaro's inside duties were not related to her tipped duties.

87.    Julia Bavaro spent approximately half of her time at work working inside the restaurant in a non-tipped capacity.

88.    Julia Bavaro was reimbursed $1.50 per delivery.

89.    Julia Bavaro was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

90.    Julia Bavaro was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

91.    Julia Bavaro purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendants.

92.    Defendants did not track the actual expenses incurred by Julia Bavaro.

93.    Defendants did not reimburse Julia Bavaro based on her actual delivery-related expenses.

94.    Julia Bavaro was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

95.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Julia Bavaro.

96.     During Julia Bavaro's employment with Defendants, Defendants failed to adequately reimburse Julia Bavaro for automobile and other job-related expenses.

97.     Julia Bavaro regularly makes two to three deliveries per hour during the hours he worked as a delivery driver.

98.     Julia Bavaro regularly drove about 5 miles per delivery.

99.     Thus, in 2017, Defendants' average reimbursement rate for Julia Bavaro was approximately $.30 per mile ($1.50 per delivery/5 average miles per delivery).

100.    In 2017, for example, the IRS business mileage reimbursement has been $.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Julia Bavaro's automobile expenses, every mile driven on the job decreased her net wages by approximately $.235 ($.535 - $.30) per mile. Considering her estimate of about 5 average miles per delivery, Defendants under-reimbursed her about $1.175 per delivery ($.235 x 5 miles).

101.    Thus, while making deliveries (assuming 2.5 deliveries per hour), Julia Bavaro consistently "kicked back" to Defendants approximately $2.94 per hour ($1.175 per delivery x 2.5 deliveries per hour).

102.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Julia Bavaro minimum wage as required by law.

**Nathan Blose**

103.    Nathan Blose worked as a delivery driver at one of Defendants' Domino's Pizza stores located at 4305 Northern Pike, Monroeville, PA 15146 from October 2017 to February 2018.

104.    Nathan Blose was paid a "tipped" minimum wage, *i.e.*, less than minimum wage, for all hours worked.

105.    Specifically, Nathan Blose receives $6.00 per hour.

106.    Nathan Blose worked for Defendants in two separate jobs.

107.    Nathan Blose delivered pizza and other food items to Defendants' customers' homes and businesses.

108.    When he was not making deliveries, Nathan Blose worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

109.    Nathan Blose's inside duties were not related to her tipped duties.

110.    Nathan Blose spent approximately half of his time at work working inside the restaurant in a non-tipped capacity.

111.    Nathan Blose was reimbursed $1.00 per delivery.

112.    Nathan Blose was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

113.    Nathan Blose was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

114.    Nathan Blose purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendants.

115.    Defendants did not track the actual expenses incurred by Nathan Blose.

116.    Defendants did not reimburse Nathan Blose based on her actual delivery-related expenses.

117.    Nathan Blose was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

118.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Nathan Blose.

119.    During Nathan Blose's employment with Defendants, Defendants failed to adequately reimburse Nathan Blose for automobile and other job-related expenses.

120.    Nathan Blose regularly makes three deliveries per hour during the hours he worked as a delivery driver.

121.    Nathan Blose regularly drove about 5-6 miles per delivery.

122.    Thus, in 2017, Defendants' average reimbursement rate for Nathan Blose was approximately $.18 per mile ($1.00 per delivery/5.5 average miles per delivery).

123.    In 2017, for example, the IRS business mileage reimbursement has been $.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Nathan Blose's automobile expenses, every mile driven on the job decreased her net wages by approximately $.355 ($.535 - $.18) per mile. Considering his estimate of about 5.5 average miles per delivery, Defendants under-reimbursed him about $1.95 per delivery ($.355 x 5.5 miles).

14

124.    Thus, while making deliveries (assuming 3 deliveries per hour), Nathan Blose consistently "kicked back" to Defendants approximately $5.85 per hour ($1.95 per delivery x 3 deliveries per hour).

125.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Nathan Blose minimum wage as required by law.

**Collective Action Statement**

126.    Plaintiffs bring the First and Second Counts on behalf of themselves and

> All similarly situated current and former delivery drivers employed at Defendants' stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

127.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

128.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

129.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and time and a half overtime wages for hours worked in excess of 40 per week.

130.    Defendants are aware or should have been aware that employees who work "dual jobs"—one of which is tipped and the other non-tipped—they cannot be paid a tipped wage rate for all hours worked.

131.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

132.    Defendants are aware or should have been aware that 29 U.S.C. § 203(m) requires them to provide delivery drivers with notice of the tip credit provision of the FLSA.

133.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

134.    The FLSA Collective members are readily identifiable and ascertainable.

135.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

136.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

**Class Action Statement**

137.    Plaintiffs bring the Third, Fourth, and Fifth Counts under the Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the JC Domino's stores in the State of Pennsylvania from the date three years prior to the filing of the complaint to the date of final judgment in this matter (the "Pennsylvania Rule 23 Class").

138.    Excluded from the Pennsylvania Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Pennsylvania Rule 23 class.

139.     The number and identity of the Pennsylvania Rule 23 class members are ascertainable from Defendants' records.

140.     The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Pennsylvania Rule 23 Class Member are determinable from Defendants' records.

141.     For the purposes of notice and other purposes related to this action, the names and contact information of Pennsylvania Rule 23 Class Members are readily available from Defendants.

142.     Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

143.     The Pennsylvania Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

144.     There are more than 50 Pennsylvania Rule 23 Class members.

145.     Plaintiffs' claims are typical of those claims which could be alleged by any Pennsylvania Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Pennsylvania Rule 23 Class member in separate actions.

146.     Plaintiffs and the Pennsylvania Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

147.     Plaintiffs and the Pennsylvania Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with PMWA 43 STAT.ANN. §333.01 and PMWA 43 STAT.ANN. § 333.104(c), and 43 P.S. § 260.3.

148.    Plaintiffs and the Pennsylvania Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Pennsylvania Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Pennsylvania Rule 23 Class members.

149.    Plaintiff and the Pennsylvania Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

150.    By seeking to represent the interests of the Pennsylvania Rule 23 Class members, Plaintiffs are exercising and intending to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

151.    Plaintiffs are able to fairly and adequately protect the interests of the Pennsylvania Rule 23 Class and has no interests antagonistic to the Pennsylvania Rule 23 Class.

152.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

153.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Pennsylvania Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely

difficult or impossible for the individual Pennsylvania Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

154.    Upon information and belief, Defendants and other employers throughout the state violate the Pennsylvania wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

155.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

156.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

    a.  Whether Defendants paid Plaintiffs and the Pennsylvania Rule 23 Class members at the proper minimum wage rate for all hours worked;

    b.  Whether Defendants required Plaintiffs and the Pennsylvania Rule 23 Class members to drive their own cars for work;

    c.  Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiffs and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

    d.  Whether Defendants required Plaintiffs and the Pennsylvania Rule 23 Class members to work in "dual jobs";

e. Whether Plaintiffs' and the Pennsylvania Rule 23 Class members' job duties completed inside the store were related to their delivery job duties;

f. Whether Defendants reimbursed Plaintiffs and the Pennsylvania Rule 23 Class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

g. Whether Defendants recorded Plaintiffs and the Pennsylvania Rule 23 Class members' actual expenses;

h. Whether Defendants properly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 each workweek;

i. Whether Defendants failed to pay Plaintiffs and the Rule 23 Class in a timely manner as described by 43 P.S. § 260.3;

j. Whether Defendants' policy of failing to pay Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

157. In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

## IV. Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

158. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

159. Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

160.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

161.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

162.    Plaintiffs and the FLSA Collective were paid a tipped wage rate for hours they worked in a non-tipped capacity.

163.    Upon information and belief, Defendants did not provide Plaintiffs with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

164.    Defendants impermissibly took a tip credit from the wages of Plaintiffs and the FLSA Collective.

165.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

166.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

167.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

<u>**Count 2**</u>
**Failure to Pay Overtime Wages—Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

168.    Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

169.     Plaintiffs and the FLSA Collective worked more than forty hours in one or more workweeks.

170.     Because Defendants required Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the FLSA collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

171.     Plaintiffs and the FLSA Collective were paid a tipped wage rate for hours worked in a non-tipped capacity.

172.     By not paying Plaintiffs and the FLSA collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

173.     As a result of Defendants' willful violations, Plaintiffs and the FLSA collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorney's fees.

**Count 3**
**Failure to Pay Minimum Wages—43 PA.STAT.ANN. § 333.101 *et seq*.**
**(On Behalf of Plaintiffs and the Pennsylvania Rule 23 Class)**

174.     Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

175.     At all times relevant, Plaintiffs and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class as defined by the PMWA and supporting regulations.

176.     Defendants were required to pay Plaintiffs and the Rule 23 Class minimum wage as required by 43 PA.STAT.ANN. § 333.104.

177.    Defendants failed to pay Plaintiffs and the Rule 23 Class the minimum hourly wages to which they were entitled under the PMWA.

178.    Due to Defendants' violations of the PMWA, Plaintiffs and the Rule 23 Class are entitled to recover unpaid wages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the three years preceding the filing of this complaint.

**<u>Count 4</u>**
**Failure to Pay Overtime Wages—43 PA.STAT.ANN. §331.104(c)**
**(On Behalf of Plaintiffs and the Pennsylvania Rule 23 Class)**

179.    Plaintiffs restate and incorporate by reference all allegations in all preceding paragraphs.

180.    At all times relevant, Plaintiffs and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class as defined by the PMWA and supporting regulations.

181.    Defendants were required to pay Plaintiffs and the Rule 23 Class overtime as required by PA.STAT.ANN. § 333.104(c) and the supporting regulations.

182.    Defendants failed to pay Plaintiffs and the Rule 23 Class the overtime wages to which they were entitled under the PMWA.

183.    Due to Defendants' violations of the PMWA, Plaintiffs and the Rule 23 Class are entitled to recover unpaid wages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the three years preceding the filing of this complaint.

**<u>Count 5</u>**
**Violation of Pennsylvania Wage Payment and Collection Law—43 P.S. § 260.3**
**(On Behalf of Plaintiffs and the Pennsylvania Rule 23 Class)**

184.    Plaintiffs restate and incorporate by reference all allegations in the preceding paragraphs.

185.    At all times relevant, Plaintiffs and the Pennsylvania Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Pennsylvania Rule 23 Class as defined by the PWPCL and supporting regulations.

186.    Defendants failed to pay all wages due to Plaintiffs and the Pennsylvania Rule 23 Class on their regular payday as required by PWPCL.

187.    Defendants were required to pay Plaintiffs and the Pennsylvania Rule 23 Class the first payment of their earnings between the first and fifteenth day of each month and the second payment between the fifteenth and last day of each month as required by 43 P.S. § 260.3.

188.    Defendants failed to pay Plaintiffs and the Rule 23 Class in the timeframe required by 43 P.S. § 260.3.

189.    Due to Defendants' violations of the 43 P.S. § 260.3, Plaintiffs and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the three years preceding the filing of this complaint.

**WHEREFORE**, Plaintiffs pray for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.       Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under Pennsylvania state law.

D.       Designation of Plaintiff as a representative of the Pennsylvania Rule 23 Class and counsel of record as Class Counsel.

E.       Declaratory judgment that the practices complained of herein are unlawful under the PMWA and 43 P.S. § 260.3.

F.       An award of unpaid minimum wages, overtime wages, unreimbursed expenses, unlawful deductions, and liquidated damages due under the PMWA and 43 P.S. § 260.3.

G.       An award of prejudgment and post-judgment interest.

H.       An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.       Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

MORGAN & PAUL, PLLC


/s/ Gregory G. Paul
Gregory G. Paul (PA ID #83334)
100 First Avenue, Suite 1010
Pittsburgh, PA  15222
(412) 259-8375
(888) 822-9421 (fax)
gregpaul@morgan-paul.com

Andrew Biller (pro hac vice application
forthcoming)
Andrew Kimble (pro hac vice application
forthcoming)
Philip Krzeski (pro hac vice application
forthcoming)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
Email: *abiller@msdlegal.com*
Email: *akimble@msdlegal.com*
Email: *pkrzeski@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiffs and the putative class*

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all

issues herein triable to a jury.

/s/ Gregory G. Paul
Gregory G. Paul (PA ID #83334)
Morgan & Paul, PLLC
100 First Avenue, Suite 1010
Pittsburgh, PA  15222
(412) 259-8375
(888) 822-9421 (fax)
gregpaul@morgan-paul.com